# Commonwealth *v.* Rossi, Appellant.

*Liquor laws—Sale without license—Evidence—Question for jury.*

1. On an indictment for selling liquor without a license the case is for the jury where the evidence for the commonwealth tends to show that the defendant took orders for beer, which he bought himself, and that it was delivered to his customers by a driver employed by himself; and this is so although the defendant testifies that he was merely acting as an agent for a brewery, and that the driver who delivered the beer was acting independently of himself.

2. On the trial of an indictment for selling liquor without a license there was evidence that the defendant set before a witness two bottles of beer, and when asked how much they were, he said "Nothing," and that subsequently he set before the same witness two bottles of beer and that the latter laid down ten cents and walked out. There was no evidence of any previous arrangement between the defendant and the witness that the latter was to get the beer and pay for it. There was also no evidence of any other occurrence of a similar kind, or that the place where it did occur indicated that a liquor business was carried on in it. *Held,* that it was reversible error for the court to instruct the jury that they were at liberty to infer that the beer was delivered pursuant to a prior arrangement.

Argued March 14, 1910.   Appeal, No. 31, Oct. T., 1910, by defendant, from judgment of Q. S. Huntingdon Co., Dec. T., 1909, No. 7, on verdict of guilty in case of Commonwealth v. Louis Rossi.   Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Indictment for selling liquor without a license.   Before WOODS, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court charged in part as follows:

There is no license granted to anyone to sell liquors in the borough of Mount Union.

This defendant, the evidence shows, resided last summer and for the last year or two, in the borough of Mount

Union. The commonwealth offers a number of witnesses. One of them, Oliver Christ, testifies that some time during the month of last July he went to the defendant and paid him $2.00, for which he was to receive two kegs of beer. He tells you how he paid it; and that in a day or two another person by the name of Tony somebody, you will remember, delivered the beer to him. Mr. Paule Shugarts says that he was along with Mr. Christ when he paid the defendant the $2.00 and ordered the two kegs of beer; and he tells you he paid it. One, Mr. Condross, says that he got $8.00 worth of beer and that he paid the defendant for it and that it was delivered in two or three days by this man Tony. Mr. Charles Deeters testifies that he went there at one time and the defendant set out four bottles of beer; that he drank two and the defendant drank two; that no consideration passed; that he went back again a little later and the defendant handed out two bottles of beer, and he laid down ten cents and walked out; that the defendant had walked into another room. Gentlemen of the jury, this is in brief the evidence on the part of the commonwealth.

Mr. Wunder takes the stand and testifies that the defendant is the agent and has been acting as agent for the Oswald Brewing Company, doing business in Altoona, and that the defendant, Louis Rossi, simply took the orders; that the beer was then sent on the orders given to the brewing company by Rossi to the parties whose names appeared on the orders. He also testifies that Tony is in the employ of the brewing company, acting as the brewing company's agent. Mr. Wunder also testifies that each consignment of beer is marked for one Hamilton and across the face of the label or tag is written the name of the person who actually paid for and was to receive the beer. [On rebuttal Mr. Christ testifies that when he received his beer his name was not on it, that Mr. Hamilton's name was the only name on it and in this he contradicts the testimony on the part of the defendant.] [2]

Now, gentlemen of the jury, as has been said by our Supreme Court, "The devices to evade this law are so numerous and so adroit, and the consequence of its violation are so serious to the welfare and good order of the community generally, that we think it is the duty of the courts to enforce the law rigidly. It is needed that all those who engage in this traffic in violation of law should know that the way of the transgressor is hard." This is quoted from a decision of the Supreme Court in a recent opinion by Judge ORLADY of the Superior Court.

Now, gentlemen of the jury, if you believe the testimony on the part of the commonwealth that these orders were given to Louis Rossi, and Louis Rossi was the agent for the brewery, and that Tony was acting independently of Louis Rossi and delivered the beer independently of Louis Rossi, then we say the defendant could not be found guilty from these sales. [But if you believe that this order was given to Rossi and Tony was acting as his agent and the goods were shipped to Hamilton and not consigned to the witness Christ then he would be guilty on that sale.] [3] [There is no evidence here to show that the beer delivered this man Condross was an illegal sale unless you believe that Tony was acting as the agent of Louis Rossi and delivered it to Condross as the agent of Rossi and not as the agent of the brewing company.] [4]

[Now, gentlemen of the jury, you are to scan all the evidence very closely, the evidence of Charles Deeters, who testifies that he went in there and paid this ten cents for the beer——

Mr. Petriken: It seems to me that the court should not use the word "paid"; that word was not used in the testimony.

The Court: Gentlemen of the jury, I say to you that it was in law a payment, if you believe there was an arrangement made between the defendant and Deeters for Deeters to get the beer in this way. If you believe there was an arrangement made between the defendant and Deeters that Deeters was to get this beer and pay for

it, then it was a payment, whether Rossi was there or was not there. As we have already quoted, "The devices to evade this law are so numerous and so adroit, and the consequences of its violation are so serious to the welfare and good order of the community generally, that we think it the duty of the court to enforce the law rigidly;" and in charging you that way we are simply enforcing the law as directed by the higher courts. The whole United States to-day seems to think that all those who engage in this liquor traffic should know that the way of the transgressor is hard. These things are brought on themselves by those who engage in the liquor traffic if they do what is in violation of law; and, if you believe that an arrangement was made with Charles Deeters for the purchase of this beer and that this defendant took this ten cents for the beer after Deeters had gone out, you should find the defendant guilty.] [5]

If you find the defendant guilty you say nothing about the costs. If you acquit the defendant you must make some disposition of the costs. The prosecutor is an officer of the law and you cannot place any of the costs upon him, but you can place the costs upon the defendant or upon the county of Huntingdon. [But before you acquit him, gentlemen of the jury, we say to you, you must scan this evidence carefully and if there was an effort to evade the law, you will find him guilty.] [6] If you have any reasonable doubt about this defendant's guilt that doubt is for the benefit of the defendant, to work his acquittal; but that doubt must arise fairly from the evidence.

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1) the entire charge of the court; (2–6) portions of charge as .above, quoting them, and (7) refusal of binding instructions for defendant.

*Harry W. Petrikin*, for appellant, cited: Com. v. Guja,

28 Pa. Superior Ct. 58; Com. v. Hess, 148 Pa. 98; Com. v. Ginader, 148 Pa. 110.

*Wm. Wallace Chisolm* and *Charles C. Brewster*, district attorney, for appellee, cited: Garbracht v. Com., 96 Pa. 449; Com. v. Leslie, 20 Pa. Superior Ct. 529; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Com. v. Holstine, 132 Pa. 357; North Wales Boro. v. Brownback, 10 Pa. Superior Ct. 227.

OPINION BY RICE, P. J., April 18, 1910:

The substance of the testimony of Oliver Christ, a witness for the commonwealth, was that he ordered from the defendant, and at the same time paid him for the same, two kegs of beer, which it was agreed between them should be delivered to him on a certain day, at a certain place, and that the beer was delivered to him on the day named by another person named Tony Giasacobella. On cross-examination he testified that after he had paid for the beer he signed his name to a paper which the defendant presented but this paper is not set forth nor is its substance given in the printed transcript of the evidence. There is nothing in the testimony of this witness or in the corroborative testimony of Paul Shugarts to indicate that the transaction was other than a personal transaction between the witness and the defendant.

The same is true of the testimony of Moxie Condross, which was to the effect that he ordered from the defendant and paid him for eight kegs of beer, and that they subsequently were hauled to his place by Giasacobella, who, he testified, was the defendant's driver. The defense, so far as these sales are concerned, was that the defendant was in the employ of a brewer in another county; that his authority was simply to solicit orders and make collections, not to deliver the beer; that he sent the orders with the money to his employer who, according to the testimony of another employee of the brewer, shipped the goods in this way: "These goods were shipped marked 'G. W. Hamilton, Mount Union' and across the face of the label was written the name of the parties whom the

goods were for, and in that way the driver at Mount Union knew who the goods were for, in connection with the list sent to the driver." This witness, as well as Giasacobella, testified that the latter was employed by the brewer. In rebuttal, the witness Christ testified that his name was not on the tag on the kegs delivered to him, but only the name G. W. Hamilton. It is argued that there could be no conviction for these sales because the deliveries were not made by the defendant. The foregoing review of the evidence shows that this contention rests on the assumption that the testimony adduced by the defendant must be taken for verity. The answer is that the commonwealth's testimony, if believed, warranted the jury in finding that the agreements for the sales were made by the defendant personally, and in inferring therefrom and the other circumstances that the person, who hauled the beer to the place and at the times agreed upon, was the defendant's employee or agent. This would be the natural inference in the absence of evidence to the contrary. Whether it was overcome by the evidence adduced by the plaintiff was a question which depended to a large extent, upon the credibility of the witnesses and was for the jury. The learned judge submitted the question to them as follows: "Now, gentlemen of the jury, if you believe the testimony on the part of the commonwealth (defendant) that these orders were given to Lousi Rossi, and Louis Rossi was the agent for the Brewery, and that Tony was acting independently of Louis Rossi and delivered the beer independently of Louis Rossi, then we say the defendant could not be guilty from these sales. But if you believe that this order was given to Rossi and Tony was acting as his agent and the goods were shipped to Hamilton and not consigned to the witness Christ then he would be guilty on that sale. There is no evidence here to show that the beer delivered this man, Condross, was an illegal sale unless you believe that Tony was acting as the agent of Louis Rossi and delivered it to Condross as the agent of Rossi and not as the agent of the Brewing Company." The defendant has no just cause to complain of these instructions or of the fairness and adequacy of the charge relative to these sales: Com. v. Pollak, 33 Pa. Superior

Ct. 600; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Com. v. Hecirrionic, 39 Pa. Superior Ct. 510. The first, second, third, fourth and seventh assignments are overruled.

The material part of the commonwealth's testimony relative to the alleged sale to Deeter may be stated in his language: "I went there and asked him if he had any beer; he said he had some; he set out some beer on the table; I drank two bottles and he drank two, and I asked him how much and he said "nothing" . . . . "I came back a few days afterwards and asked him if he had any more. He set the beer out and I drank two bottles and laid ten cents down and walked out." Upon cross-examination he was asked whether the defendant saw him leave, to which he answered "No, sir; he walked over in the other room." This was not tantamount to saying that the defendant left the room before the witness laid down the ten cents. We cannot say that the testimony of this witness, taken as a whole, was insufficient to warrant the court in submitting to the jury the question whether the defendant delivered beer to the witness for which he accepted pay, and instructing them that if he did, there was an unlawful sale. But we think there was error in instructing them that if "there was an arrangement made between the defendant and Deeters, that Deeters was to get this beer and pay for it, then it was a payment whether Rossi was there or was not there." The jury might well understand from this and other instructions in the same connection, that they were at liberty to infer that the beer was delivered pursuant to a prior "arrangement." We discover no sufficient evidence to sustain that finding. There is certainly no direct testimony to that effect and in considering whether the circumstantial evidence was sufficient it is to be borne in mind that this was the first and only transaction of the kind that was shown in the case, and that there is no evidence that it occurred in a place having indications that such business was carried on in it. If there was such an arrangement Deeters must have known it but he was not asked to testify whether there was or not. Nor can we safely conclude, that the instruction was harmless, particularly when considered in connection with this instruction near

the end of the charge: "But before you acquit him, gentlemen of the jury, we say to you, you must scan this evidence carefully and if there was an effort to evade the law you will find him guilty." The learned judge was within his province when he admonished the jury that the devices to evade the liquor law are so numerous and so adroit and the consequences of its violation are so serious to the welfare and good order of the community generally, that it should be enforced rigidly. But, on the other hand, it is as essential in this class of cases as in others, that the evidence, and that alone, shall convince the jury beyond a reasonable doubt, that every element of a completed violation of the law exists in the case, before there can be a conviction. We cannot avoid the conclusion, that the instructions to which we have alluded had a tendency to relax the well-settled rules which are for the protection of the accused. The fifth and sixth assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded.